# SUPREME JUDICIAL COURT

FOR THE COUNTY OF

# LINCOLN.

## OCTOBER TERM,

## 1822.

---

### VARNER v. The Inhabitants of NOBLEBOROUGH.

The legal presumption arising from the fact of drawing a negotiable order, or making a negotiable note, which is received by the creditor, is, that it was intended to be, and in fact is, an extinguishment of the original demand or cause of action. But this presumption may be controled or explained by the agreement of the parties, or by proof of usages or circumstances inconsistent with such presumption.

A town order, drawn by the selectmen on the treasurer, must be presented to the treasurer for payment, before any action can be sustained on it, in the same manner as a note for the payment of money at a particular place. But no notice need be given to the selectmen, of non-acceptance or non-payment by the treasurer.

Such a town order is good evidence to support a count on an *insimul computassent*.

*Assumpsit.* The declaration contained two counts—one on an *insimul computassent*—and the other being a general *indebitatus assumpsit*—to which the general issue was pleaded.

To support the action, the plaintiff read to the jury an order drawn by the selectmen of *Nobleborough* on *David Dennis*, their treasurer, requesting him to pay the plaintiff a certain sum, being the amount due him for building a bridge for said town. But there was no proof offered that the order was ever presented to the treasurer for payment.

Hereupon, by consent of parties, a nonsuit was entered, subject to the opinion of the whole Court whether, upon this evidence, the action was maintainable.

*Allen* and *Bellard,* for the plaintiff.

The implied contract originally existing between these parties is still in force unless merged in one of an higher nature. But the paper offered in evidence cannot be regarded as a higher security, because it wants the essential attributes of a bill of exchange or a mercantile order. None of the parties to it are personally responsible in the event of its non-payment,— and it is payable out of a particular fund. *2 D. & E.* 243. And if it were a bill of exchange, it would be no payment unless specially accepted as such. The taking of a negotiable paper is not necessarily a bar to an action on the original implied contract. *Maneely v. M'Gee,* 6 *Mass.* 143. And if it were, yet the instrument in the present case can be no other than a bill drawn by a party on himself, in which case no notice is necessary.

But in fact the paper is merely evidence of an *insimul computassent.* *Keyes v. Stone,* 5 *Mass.* 391. *Curtis v. Greenwood,* 6 *Mass.* 358. It is like the case of one who, having adjusted the account of his servant and ascertained the amount due him, gives him a draft or scrip addressed to his steward or cash-keeper, directing him to discharge the debt. And so, it is understood, this sort of instrument was treated in *Slemmons v. Westbrook,* decided some years since in *Cumberland.*

*Orr, Reid* and *A. Smith,* for defendants.

The paper offered in evidence is a negotiable order for the payment of money, and, like any other negotiable paper, it is a bar to any action on the implied contract, which it extinguishes. And it is to be treated as all other negotiable instruments, the drawers of which are entitled to demand on the drawee, and notice of non-acceptance, or non-payment. *Thatcher v. Dinsmore,* 5 *Mass.* 299. *Darrar v. Savage,* 1 *Show.* 150. 3 *Wils.* 353.

After this argument, which was had at the last term, the cause being continued for advisement, the opinion of the Court was now delivered, by

MELLEN C. J. Although in this case there is no count upon the order, yet as there is one for services performed, and another upon an *insimul computassent,* we apprehend it was competent

Varner *v.* Nobleborough.

for the plaintiff to declare in the manner abovementioned against the defendants, and maintain the action by giving the order in evidence, as well as by declaring on the order itself: and that in *this respect*, it is immaterial whether the order be considered as an extinguishment of the original cause of, action or not.

The plaintiff has relied upon a decision of the Supreme Judicial Court of *Massachusetts*, not reported, in the case of *Slemmons v. the town of Westbrook.*—We have examined the record and statement of facts in that case. The suit was on a town order *not negotiable :* and there was also a count on an *insimul computassent.* We have also endeavoured to ascertain what facts took place and what observations were made by the Court at the trial; respecting both which the counsel who were engaged in the cause differ in their recollection and statements.—It seems that the cause was continued to ascertain whether the original debt, for the payment of which the order had been given, was discharged by a receipt or whether it was expressly received in satisfaction. No such proof was adduced; but the Court sustained the action, probably on the *second* count or *insimul computassent.* There was no evidence that *Slemmons*, the payee, had ever presented the order to the treasurer for payment. But on whatever principle the Court founded their opinion in that case, there is a difference in the two town orders. In the case before us the order, in form at least, is *negotiable ;* in *Slemmons v. Westbrook* it *was not so.* That case therefore is no *direct* authority ; and we must now decide whether the above difference between the two instruments leads to different conclusions in the application of legal principles.—It has been contended by the plaintiff's counsel that the order, though negotiable *in form*, is not so in legal *consideration ;* being payable out of a particular fund, viz. the town's money in the treasury. We do not perceive the force of this objection.—The treasurer is requested to pay the amount of the order out of the treasury, where the funds of the town were deposited. This is no more than what is understood in case of all bills. They are to be paid out of the funds of the drawer in the hands of the drawee. When a bill is drawn payable from an uncertain fund, or one depending on a contingency, it is not negotiable.

It was next contended that, if the order be legally negotiable, it has not operated to extinguish the original debt and merge the original cause of action, so as to prevent the plaintiff from recovering upon it in the same manner as *Slemmons* was permitted to recover against *Westbrook.*—It is *admitted* by the counsel that the acceptance of a *negotiable promissory note*, does extinguish the original cause of action, according to the cases of *Thatcher v. Dinsmore, Maneely v. M'Gee,* and *Curtis v. Greenwood,* which were cited in the argument; but *denied* that a similar effect is produced by the acceptance of a *bill of exchange or order* given for a similar purpose.

Is there, then, any difference between a *negotiable promissory note,* and a *negotiable order,* as to its effect and operation to extinguish the original cause of action? No cases have been cited to shew the alleged distinction; on the contrary, the cases before mentioned assign the reason of the principle to be that " a creditor may indorse the note; and if he would compel " payment of the original debt, the debtor might be afterwards " obliged to pay the note to the indorsee, and thus *be twice* " *charged,* without any remedy at law." This is the language of *Parsons C. J.* in *Maneely v. M'Gee.* He used nearly the same expressions in *Thatcher v. Dinsmore,* and assigns the same reasons for the principle of law. The same principle is stated in *Johnson v. Johnson,* 11 *Mass.* 359. Now it is not easy to perceive why those reasons do not apply as fully and as forcibly in the case of an *order* as a *note,* where both are made negotiable; and why the danger of being compelled to make a *second* payment of a demand is not as great on the part of the drawer of *such* an *order* as the promiser of such a *note,* if the original debt and cause of action be not extinguished by the acceptance of the new negotiable security. It would seem that as in *both* cases the *reason* of the law is the same, so is *the law* the same.

But it has been further contended by the plaintiff's counsel that bills of exchange are often, perhaps generally, drawn without intending thereby to close an account or produce any effect on the subsisting demands between drawer and drawee *until payment*;—leaving them, until that time, unextinguished. Admit this to be the fact, and that the general usage and understanding be such as he has stated between merchants in the

transactions of commerce and remittance of monies, we apprehend the argument is not applicable to cases like that under consideration.

The legal presumption arising from the fact of drawing a negotiable order or making a negotiable note, which are received by the creditor, is, that they were intended to be and in fact are an extinguishment of the original demand or cause of action. But, as in all other cases, this presumption may be controled or explained by *the agreement of the parties*, or by proof of circumstances or usages inconsistent with such presumption. Still, in the absence of such controling or explaining evidence, the legal presumption must have its effect; all four of the cases before mentioned are explicit on this point.— Now, on examining the facts reported, we find nothing which has a tendency to shew that the order in question was not *given* and *received* as payment in full and a discharge of the original debt and cause of action.

The remaining inquiry is whether a plaintiff *declaring* on such a negotiable town order, or *giving it in evidence* in support of a count on an *insimul computassent*, must not prove the same facts relative to the *presentment* of it, to entitle him to recover, as he would be obliged to prove in case of an order drawn by one man on another, payable to order, in the common course of business, and having no connection with town proceedings.— Perhaps, in case of presentment and non-payment, no *notice* need be given to the selectmen; because, if an order under such circumstances is properly compared to a promissory note, no notice would be requisite, any more than in all other cases of promissory notes for cash, and payable on demand. Why should any distinction exist between *this* order and those in common cases, with respect to the circumstance of presentment for payment? What good reason can be found to support such distinction? It is urged that the several officers of the town are to be considered as *one person*, and identified with the town; that the mode by them adopted for transacting their prudential concerns, cannot affect the rights of those persons dealing with them; nor the transaction itself be governed by the principles of law regulating bills of exchange.—It has been said that an order drawn by selectmen on a town treasurer is nothing more in a

legal point of view, than an order drawn by the town on itself; or by any individual on himself. But on this principle the plaintiff has not entitled himself to maintain his action. *Chitty,* page 22, says " a bill will be valid where there is only one party " to it; for a man may draw a bill on himself, payable to his " own order:—but in such case it is said that the instrument is " more in nature of a *promissory note,* than a bill of exchange." See also *Bayl.* 26. The order in question was to be paid by the treasurer. The selectmen were the agents of the town— drawing the order on their account on the town's banker. The case may be justly compared to that of a draft by a man on his banker; or a note payable at his banker's, or by his agent. In which cases it seems settled that the draft or note must be presented at the place appointed. *Chitty,* 134, 135, and cases there cited. *Saunderson & al. v. Judge,* 2 *H. Bl.* 509. *Berkshire Bank v. Jones,* 6 *Mass.* 524. *Woodbridge v. Brigham,* 13 *Mass.* 556.

But in addition to the authority of decided cases, so nearly resembling this in principle, a strong argument against the present action arises out of the general—perhaps we may say universal mode of conducting the affairs of a town in the settlement of accounts and payment of debts due from the corporation to individuals.—Persons transacting business according to an established and well known usage, are presumed to assent to such usage and contract in reference to it.—*Lincoln and Kennebec Bank v. Page,* 9 *Mass.* 155.— —— *v. Hammet,* 9 *Mass.* 159.—*Weld v. Gorham,* 10 *Mass.* 366.—*Blanchard v. Hilliard,* 11 *Mass.* 85.—*Jones v. Fales,* 4 *Mass.* 245.—Now it is universally understood that selectmen, who draw an order on behalf of the town in favour of any of their creditors, have not the funds of the town in their hands; but that they are in the possession of the treasurer.—When any creditor of the town receives an order on the treasurer for the amount due to him, he must be considered as understanding these facts and assenting to this mode of receiving payment; and as accepting the order under an implied engagement to conform to the established usage, and present the order to the treasurer for payment.— Good faith requires him to do this and the law considers him as promising so to do.—If, on presenting the order, payment be refused, the town *which drew the order on itself* must be answer-

able *instanter* for the reasons before assigned.—But no sound reason can be given why a town should be subjected to the perplexity and costs of an action, before the payee of an order will give himself the trouble to do his duty and request payment of the money due him according to the terms of it.—We have no reason to believe but that the contents of the order would have been promptly paid on application at the treasury. Justice as well as law are against the plaintiff according to the facts before us.

As the plaintiff had no cause of action when he commenced it, the nonsuit must be confirmed.

> *Motion to set aside the nonsuit overruled—*
> *and judgment for the defendants for costs.*