## Descadillas & *al.* vs. Harris.

The master of a vessel, having, in a foreign port, borrowed money on the credit of the owner, for the necessary purposes of the voyage, is a competent witness for the lender, in a suit against the owner of the vessel to recover the money borrowed, though he may have drawn a bill of exchange on his owner for the amount.

A negotiable security, given in a foreign country, is not to be regarded here as an extinguishment of a simple contract debt there created, unless it is made so by the laws of that country.

The giving of such security here, is only presumptive evidence of the intent to extinguish the prior simple contract debt ; liable, like all other presumptions, to be rebutted.

The master of a vessel, being in a foreign port, has authority to borrow money on the credit of his owner for the necessities of the voyage, though the necessity arose from his own misconduct.

Where the master, being consignee of the cargo, on his arrival at a foreign port, inquired at the custom house what would be the amount of the duties and charges there payable by him, and retained for that purpose, out of the proceeds of his outward cargo, the sum thus ascertained, investing the residue in a return cargo ; but after being ready for sea, discovered that the sum computed at the custom house was too small by three hundred dollars ;—it was held that this constituted a case of necessity sufficiently strong to authorize him to borrow the deficiency, on the credit of his owner.

THIS was an action, of *assumpsit,* brought by *Descadillas, Allaine* and Company, merchants in *Guadaloupe,* against the charterer of the brig *Pacific,* for money lent to *David P. Shaw,* master of the brig, at *Point Petre,* for the necessary purposes of the voyage.

It appeared that the brig was sent from *Portland* to *Point Petre* with a cargo of lumber, consigned to the master, who was ordered to invest the proceeds, together with other funds of the owner which were then in *Guadaloupe,* in a return cargo of molasses. The captain, on his arrival at *Point Petre,* inquired of the collector of the port what would be the port charges and duties, and was informed that they would amount to about five hundred dollars. When he went to the custom house to clear out his vessel, he found that the

amount of duties and charges was eight hundred dollars, the collector having erroneously computed them. Having retained in his hands only the sum first named, the residue of his funds being invested agreeably to the orders of the owner, he applied to several masters of vessels and to two merchants to obtain money for the deficiency, offering to turn out molasses for the amount; but without success. He at length borrowed it of the plaintiffs, to whom he offered a guaranty on part of his cargo, which they declined, but took his bill of exchange for the amount on the defendant, whose house they recognized as good. This draft was presented to the defendant, who refused to accept it; whereupon the plaintiffs sued *Shaw* as the drawer, and had judgment against him for the amount of the bill, interest, damages and costs; but not being able to obtain satisfaction, they brought this action against the defendant, charging him, on the common counts, for the same sum.

*Shaw* testified that he received the money of Mr. *Allaine*, who took the draft payable to the plaintiffs. And Mr. *Terasse*, a merchant, testified that *Allaine* procured the money through *Descadillas* and *Allaine*; which was the former name of the house to which two of the plaintiffs belonged, before the introduction of the third partner.

The principal facts were testified by *Shaw*; to whose competency the defendant objected; but *Weston J.* before whom the cause was tried, overruled the objection. It was also objected by the defendant that the money did not appear to have been advanced by the plaintiffs, but by *Allaine*; which the Judge left to the jury. It was further objected that the necessity for the loan was created by the folly and imprudence of the master, and that therefore he had no authority to bind his owner; and that no such necessity could have existed, as he might have raised the money by a sale of part of the cargo. And it was contended that even if any implied contract had been raised between the parties, it was extinguished by the acceptance of a negotiable security for the sum borrowed.

But the Judge instructed the jury that if there was a necessity for further funds, though such necessity might have arisen from a want

of due care and prudence on the part of the master, he had a right to hypothecate the whole or a part of the cargo to raise them ; and that where he might hypothecate, he might also borrow without it, on the credit of the owner. And a verdict being returned for the plaintiffs, the Judge reserved the questions raised at the trial for the consideration of the Court.

*Longfellow,* for the defendant, argued that *Shaw* was inadmissible as a witness, because directly interested in the matter in controversy ; and that if interested both ways, yet the balance of interest was against the defendant. *Emerton v. Andrews,* 3 *Mass.* 253 ; *Scott v. McLellan,* 2 *Greenl.* 199 ; *Jones v. Broke,* 4 *Taunt.* 464 ; *Gage v. Stewart,* 4 *Johns.* 293. But if he were admissible, the defendant is not liable, the claim of the plaintiffs being extinguished by the negotiable security taken. *Varner v. Nobleborough,* 2 *Greenl.* 121 ; *Exparte Hodgkinson,* 19 *Ves.* 291. He also contended that the money was not advanced by the plaintiffs, but by *Allaine* alone ; and that there existed no necessity for the loan, as the master had property in his hands out of which the money could have been made.

*Greenleaf,* for the plaintiffs, to the competency of the witness, cited *Milward v. Hallet,* 2 *Caines,* 77 ; *Ilderton v. Atkinson,* 7 *D. & E.* 480. To the authority of the master in a case like the present ; *Abbot on Shipping,* 107 *note ; Evan v. Williams,* 7 *D. & E.* 481 *note ;* 3 *Kent's Com.* 125 note c ; *Cupisino v. Perer,* 2 *Dall.* 195. And that the remedy against the owner was not extinguished ; *Gallagher v. Roberts,* 1 *Wash. C. C. R.* 320 ; *Parker v. The United States,* 1 *Pet. C. C. R.* 262 ; *Wallace v. Agry,* 4 *Mason,* 342.

The cause having stood for advisement since the last *May* term, when the arguments were heard, the opinion of the Court was now delivered by

PARRIS J. The first question presented by the report is as to the competency of *Shaw,* the witness. From the evidence reported, independent of his own testimony, it appears that he was master of the brig *Pacific,* chartered by the defendant for a voyage from

*Portland* to the island of *Guadaloupe,* and back. This fact appears by his letter of instructions given him by the defendant, and the testimony of several of the witnesses. We are then to consider the witness as master of a vessel in the defendant's employment, •clothed with all the powers usually incident to such an office ; and also, by virtue of special instructions, invested with the additional power of selling and purchasing cargo.

The witness is offered for the purpose of proving the circumstances under which the money, sought to be recovered in this action, was furnished, and the existence of such a necessity as would authorise the master to borrow on account of the owner.

He was the confidential agent of the owner, and as such, had authority to bind him in contracts relating to the subject matter of his agency. The witness had been appointed by the defendant to the charge of his vessel, with directions to proceed to her port of destination, sell the outward cargo, purchase a return cargo, and return to *Portland* with as little delay as possible. He procured from the plaintiffs three hundred dollars to enable him to defray the port and custom house charges required to be paid before he could be permitted to proceed on his return voyage ; for which sum he drew bills on the defendant. As drawer of these bills, they not having been accepted and paid, he is liable to the holders at all events, and judgment has been rendered against him thereon for the full amount of his liability. That judgment not having been satisfied, the plaintiffs claim to recover of the defendant the sum by them advanced, as they allege for his use. Does *Shaw* stand indifferent as to interest between these parties ? He received this money in the capacity of master of the defendant's vessel. His having drawn on the defendant for the amount did not create his liability. Not having exempted himself from personal responsibility by expressly confining the credit to the owner, he would have been personally answerable to the plaintiffs for the amount advanced, if no bills had been drawn.

The master is always personally bound by his contracts, and the person who deals with him concerning the usual employment of the ship, or for repairs, or supplies furnished her, has a remedy upon the master on his own contract, and also on the owner upon the

contract made on his behalf by his agent.　It is this remedy against the owner which the plaintiffs now attempt to enforce.　If they should be successful in this attempt, how would it relieve *Shaw* ? In the first place, they have a judgment against him covering the sum loaned, and all damages, interest and costs growing out of the protest of the bills, so that whatever may be the result of this action, *Shaw* cannot avail himself of it in defence.　But if the effect of a recovery by the plaintiffs here would be, to relieve *Shaw* to the same amount from their judgment recovered against him, by charging it upon the defendant, yet it does not exonerate *Shaw*, but merely changes his liability.　Instead of being answerable to the plaintiffs for the amount loaned, he will be required to account for it with the defendant.　If the plaintiffs recover against *Harris*, *Shaw* is answerable to him ; if *Harris* recovers against the plaintiffs, *Shaw* is answerable to them.　He has received the money, which is the subject of this suit, and is accountable for it to one or the other of these parties, and to which, must be matter of entire indifference to him. But it is said by the defendant's counsel that this question comes within the principle recognized by this court in *Scott v. McLellan & al.* 2 *Greenl.* 199.　To us there seems to be a manifest distinction.　That was a case where *Bradshaw,* a supercargo of defendants' vessel, had drawn a bill on his owners, which was holden by the plaintiff as indorsee.　He attempted to charge the defendants as acceptors of the bill, on the ground that they had given their supercargo authority to draw it, and the deposition of *Bradshaw* was offered to prove his authority.　The court held the witness incompetent, as he did not stand indifferent as to interest between the parties, he being liable to *McLellan* and *Turner* for the amount of the bill only, in case upon his evidence, the plaintiff recovered against them as acceptors, while on the other hand, if the defendants recovered, the witness would be answerable as drawer of the bill to the plaintiff, the holder, for the payment of damages, interest and costs, as well as the bill itself.　Not so in the case at bar.　This action is not brought on the bill.　The defendant is not attempted to be charged upon that, but in *assumpsit* for monies advanced for his use.　For

the damages and charges arising in consequence of the protest and nonpayment of the bill, the witness as drawer, is already fixed by a judgment, and the amount of his liability will not be increased or diminished by the result of this suit. If the plaintiffs' judgment against the witness would be cancelled to the amount which may be recovered against *Harris* in this action, then *Shaw* would stand indifferent, for his liability to *Harris* would be increased to the same amount that it would be diminished to the plaintiff. But if the plaintiffs' judgment against *Shaw* would not be affected by a recovery against *Harris*, then the witness would testify against his own interest, for by charging *Harris* he would render himself ultimately liable for the same amount.

The case of *Milward v. Hallet*, 2 *Caines*, 77, was precisely like the present, so far as it related to the admissibility of the witness. There the master of the defendants' vessel, being at *Hispaniola*, drew a bill on his owner in *Philadelphia*, who refused to accept it. The lender brought his action on the usual money counts against the owner for the amount furnished, and offered the master, as a witness to prove the necessity. The same objection was interposed to his competency, that has been urged at the bar, and although the court were divided in opinion upon other points in the case, they were unanimous in favor of his admissibility.

The case of *Evans v. Williams & al.* 7 *T. R.* 481 *note*, is also directly in point. That was *assumpsit* for money paid to the use of the defendant. The defendants were owners of an East Indiaman, whose captain, *Maxwell*, loaned money of the plaintiff, as the plaintiff alleged, for the use of the ship, but as the defendant contended, for the use of the captain himself.

The plaintiff called *Maxwell*, who was objected to as being interested to discharge himself by throwing the liability upon the owners. To this it was answered, that if so, the owners had a remedy over against him, and that he was perfectly indifferent, being liable to the plaintiff upon his own bill of exchange on the one hand, and to the owners on the other. Lord *Kenyon* thought the objection well answered and that the witness stood indifferent between

the parties;—for whichever way the case should be decided, he would be equally answerable.

At the following term a new trial was moved for, but, upon argument was refused. *Abbot on Shipping*, 103, *note* p. We think the deposition of *Shaw* was properly admitted.

Again, it is urged in defence, that the plaintiff cannot recover, because, having taken a bill of exchange of the master, the original liability of the owner was thereby extinguished, and the case of *Varner v. Nobleborough*, 2 *Greenl.* 121, is cited as authority to this point. It is true that this court has decided that the legal presumption arising from the fact of drawing a negotiable order or making a negotiable note, which is received by the creditor, is, that it was intended to be, and in fact is an extinguishment of the original demand or cause of action. But this presumption, like all others, is liable to be rebutted by proof of facts or circumstances inconsistent with it. In the case before us, the plaintiffs made advances to the confidential agent of the defendant, and for whose acts, within the scope of his authority, the defendant was answerable. The advances are alleged to have been made for the defendant's benefit, and under such circumstances as entitled the plaintiffs to a remedy against both master and owners. In cases of necessity, the master has the power of hypothecating the ship, and freight and even the cargo in a foreign port, for the purpose of procuring supplies or repairs ; or, if he chooses not to hypothecate, he may borrow upon the credit of his owners, in which case his own credit will also be pledged, unless he expressly stipulates to the contrary. If he can obtain funds upon the personal credit of his owner, it is his duty to do so, rather than borrow on bottomry. The plaintiffs, on advancing their money, thus had, at least, a double remedy. They might look to the master, to the owner, or to both ; or they might have accepted an hypothecation, which was offered.

Is it probable, or rather is it to be presumed, that they intended to discharge the most responsible security, and rely solely upon the most irresponsible ; to decline the hypothecation, absolve the owner from his personal liability and trust wholly to the solvency of the master ? And yet according to the principle contended for by the

Descadillas & al. *v.* Harris.

defendant, such would be the effect of taking the master's bill of exchange.

But the deposition of *Terasse* explains this. He testifies, that the plaintiffs declined taking a guarantee upon a portion of the cargo, which was offered them by the captain, because the defendant's house was recognized as good;—clearly indicating that so far from relinquishing their claim upon the owner personally, they were willing to trust to him, rather than to a hypothecation of a portion of the cargo. By the common law a negotiable promissory note given by a debtor to his creditor for a subsisting debt is not a discharge of the debt, unless by express agreement; and such is understood to be the law in most of these States. The reason given for the modification of the common law here is, that as the creditor might indorse the note, if he could compel payment of the original debt, the debtor might be afterwards obliged to pay the note to the indorsee and thus be twice charged, without any remedy at law. Of such a state of things, however, the defendant in this action has no cause to be apprehensive. He has done nothing to affect or change his original liability. He has neither made himself answerable as drawer or acceptor, and a judgment against him in this case would be a perfect bar against any future suit for the same cause. If the drawing and receiving the bill had been a transaction between the parties to this suit, they residing and contracting within this jurisdiction, perhaps this point might have been successfully urged in the defence. But the money was loaned and the contract made and to be executed in a foreign country, and, unless discharged by the law of that country, is, *jure gentium,* to be carried into effect, whatever forum may be applied to for that purpose. When this money was advanced by the plaintiffs and received and applied to the defendant's use by his duly authorised agent, the defendant became answerable in law for its repayment. The contract, for such it may be considered, was made between the parties in this suit in submission to the laws in force at *Gaudaloupe,* which are understood to be the laws of *France,* and we have no evidence that by the French law the taking a bill of exchange is an extinguishment of a prior debt. Such is understood not to be the civil law, and

the French commercial code contains no such provision. If, however, this be the law at *Gaudaloupe*, it is incumbent on the party, who relies upon it in defence to prove it. Not having done so, it is to be considered like every fact not proved, as not existing. The defendant, by constituting *Shaw* master of his vessel, clothed him with full power, wherever he might be in the regular discharge of his duty as such, to bind his owner or principal, personally, for repairs and necessaries, and if the money sought to be recovered in this suit was fairly and regularly lent by the plaintiffs to supply the necessities of the ship and enable her to prosecute her voyage, and return to her home port, then is the defendant answerable for its payment, notwithstanding the giving the bill of exchange by the master.

But it is objected farther, by the defendant, that the advances were not made by the plaintiff, but by one *Allaine*, and that he alone can sustain an action therefor. The proof as to this fact is all in deposition, and comes from the master and one *Terasse*, to whom he sold a part of the outward cargo. The master testifies, that he obtained the money of *Allaine*, who took the draft payable to *Descadillas, Allaine & Company*, who are the plaintiffs in this action. *Terasse* testifies, that the master applied to *Allaine*, who could not furnish it himself, but procured it through *Descadillas* and *Allaine*, to whom the captain offered a guarantee upon a portion of his cargo, which was not accepted, as *Descadillas* and *Allaine* were satisfied with a draft of the captain on his owners, whose house was recognized as good. Who furnished the money was a question to be settled *in limine* at the trial. Unless advanced by the plaintiffs, the very foundation of their action was defective. The question was raised, and, as appears by the report of the Judge, who tried the cause, was submitted to the jury, who found, on this point for the plaintiffs. As a question of fact it is, therefore, settled, and is not now open for further discussion.

The only remaining point raised in the defence is, as to the necessity under which the advances are alleged to have been made.

It is contended in the defence, that there was no necessity for these advances, or if there were, that it was occasioned by the neg-

ligence of the master in not reserving sufficient means to meet the demand, for the payment of which this money was borrowed. From the report of the case, it appears that the defendant had chartered the brig for the voyage, and that *Shaw*, as his captain, was directed by him to proceed to *Point Petre* in *Gaudaloupe*, and there dispose of his outward cargo to the best advantage, and, with the proceeds, purchase molasses, which together with the proceeds of a former cargo sent out by the same owner, was to be shipped on board the *Pacific*, and the whole returned to *Portland* with as little delay as possible. Soon after his arrival at *Point Petre*, the captain made inquiry of the collector of the port what would be the port charges and duties, who, after making an estimate, replied that they would be about five hundred dollars.

On being about to clear out, the captain, again with the merchant to whom he sold, went to the custom house, and was then informed by the officer of the customs, that the amount to be paid was eight hundred instead of five hundred dollars, as had been estimated. The captain, being deficient of funds, having reserved only five hundred dollars, the amount first estimated, applied to *Terasse*, the merchant to whom he sold his outward cargo, requesting him to advance the money, and offering to turn out molasses to him for the amount, but this was declined. He then applied to two other merchants, for the same purpose, and also to some masters of vessels in port, but could not obtain the money. At length it was obtained of the plaintiffs, as before stated. It also appears from the report, that it would not have been in the power of the captain to have cleared out from *Point Petre* without having obtained the amount furnished him by the plaintiffs, and that the money, so furnished was applied to the payment of port and custom house charges on the vessel and cargo.

The captain is the authorised and confidential agent of the owners, both as to the employment of the ship and the means of her employment, and although he may have abused his agency by squandering their funds, and the existing necessity may have been caused through his unfaithfulness, still if the necessity do actually exist, and the master, on his application, is furnished with the

means of relieving such necessity, the owner is personally answerable. The creditor has to prove merely the existence of the necessity, not what led to it. It would be an anomalous procedure to allow an owner, whose property had been relieved from peril, to shield himself from remuneration, on the ground that the peril had been caused by his own folly, or the unfaithfulness or fraud of his agent. If indeed the necessity be caused by the creditor, or with his privity, then, standing in his own wrong, he may be remediless. But against the claim of one, who has furnished relief when actually necessary, himself not having been instrumental in causing the necessity, the fraud or the negligence of others, for whom he is in no wise responsible, cannot be urged, much less the acts of the owner himself or his authorised agent.

But we cannot perceive, in this case, any evidence of negligence or want of proper caution on the part of the captain. He knew that on his clearance, duties and port charges would be payable, and that he must reserve the means of discharging them, whatever they might be. He well understood that the residue of the owner's funds in his hands was, by his instructions, to be invested in a return cargo, and his application to the collector of the customs, previous to the investment of his funds, for the purpose of ascertaining the probable amount of charges payable on his clearance, was the only safe and proper course to be pursued. If the officer, whose duty it was to calculate and receive the duties, made a mistake in his estimate, it was not the fault of the master. He might well presume upon the accuracy of the chief officer of the customs, and if, instead of reserving the five hundred dollars he had reserved eight, and the collector's estimate had proved correct, his owner might well have charged him with disobedience of orders in not investing the full amount of his disposable funds in the return cargo. What was the situation of the master? His vessel in a foreign port ready for sea, the cargo on board, and a deficiency of means requisite to pay custom house charges. The money must be raised or the brig be detained. How could it be raised except by borrowing? By a sale of a part of the cargo, is the defendant's answer. The proof is that this was attempted by the master, but

without success. The cargo was the produce of the Island. The merchants there were sellers not purchasers, and it was not to be expected that from such a source, under such an exigency, money could be raised, at least without a sacrifice.

The proper mode of ascertaining what is necessary, is to ask what a prudent owner would himself have done, had he been present. Would the defendant, under existing circumstances, have unladed a portion of his cargo and thrown it into the market to raise money to pay port charges, especially when his house was considered good (as the witness *Terasse* testifies was the case) and he could readily have procured it on his personal security? We think he would not, and that his captain would not have been justified in so doing; or what is sufficient for this case, that he discovered no want of fidelity and prudence in not doing it.

The fact that the vessel could not put to sea without the payment of the port charges, and that the master had not the means of paying them, constituted the necessity under which he was authorised to borrow on the personal responsibility of his owner. · The sum borrowed was all requisite and applied to relieve the necessity; advanced on the credit of the defendant's house; procured and expended for his benefit, by his authorised agent, and it would be severe law indeed, that would not, under such circumstances, afford relief to the lender.

This is a stronger case for the plaintiff than was that of *Milward v. Hallet*, before cited, and is relieved from the objection which was urged by *Kent J.* to that decision. In that case, the owner of the ship was not the owner of the cargo, and *Kent* held, that although the master was the agent of the owner of the ship, and might bind him for necessaries for the ship, yet he was not his agent, so far as related to the cargo, and that the payment of the export duties, in that case, was made by the master in the assumed character of agent respecting the cargo. But no such difficulty exists here. *Harris* was the charterer, and consequently is to be considered as the owner for the voyage, and he was also the owner of the cargo. By appointing *Shaw* master of his vessel, he constituted him his agent, so far as related to her employment, and

supplying the means of her employment, and by his special instruc-
tions in writing, he constituted him supercargo, or agent for the
voyage so far as related to the cargo.    Whatever he did there-
fore, relating to either vessel or cargo, he did as the authorised
agent of the defendant, and so far as he kept within the limits of his
authority, his acts are as binding upon the defendant, as if done by
himself.                    *There must be judgment on the verdict.*