Comstock v. Smith.

MOSES R. COMSTOCK *versus* STEPHEN SMITH & *al.*

Where a sale of the right to cut and take off standing timber is on condition, that " all the timber cut on said land shall be and remain the property and subject to the control of the proprietor of the land" until payment of the consideration therefor shall have been made, the person receiving such permission cannot grant to a third person any right to such timber against the proprietor of the land, which will vest the property in him, without performance of the condition. His possession of the timber, therefore, although with the knowledge of the owner of the land, will not impair the rights of the latter.

Where the bill of exceptions merely sets forth, that a deposition was offered, and on being objected to by the other party, was excluded by the presiding Judge, without stating that the rejection took place on account of interest in the deponent, informality in the caption, irrelevancy, or other cause, the Court cannot decide thereupon, and the exceptions must be unavailing.

If a deposition be improperly rejected, yet this will furnish no cause for granting a new trial, if the party offering it, is not injured by the rejection.

The acceptance of a negotiable security for an existing indebtedness by simple contract, is to be deemed payment; but it is competent for the parties to agree, that it shall be received as collateral security merely; and proof by parol may be admitted to show, that it was so taken.

When a negotiable security is taken as collateral to an existing debt, the holder may endeavor to make it available by a suit; and failing of success, he may resort to his original security, without restoring that taken as collateral.

THIS case came before the Court on exceptions, and on a motion for a new trial, because the verdict was against the evidence.

The last provision in the permit to cut timber from the agent of the proprietors to Bartlett was this. " And all the timber cut on said land shall be and remain the property and subject to the control of said Stackpole, until one half of the amount of the stumpage for the lumber, cut under this permit, shall have been paid, which shall be on or before July 1, 1835, and an indorsed note or draft, satisfactory to said Stackpole, payable September 1, 1835, for the other half, shall have been given, and all the other conditions contained in this permit shall have been duly and faithfully performed." The whole evidence at the trial, and papers read, amounting to fifty pages,

appear in the exceptions. It is believed, that the questions of law will be sufficiently understood from what appear in the instructions to the jury, and in the opinion of the Court.

After the evidence at the trial, TENNEY J. presiding, was before the jury, the exceptions state that the defendants contended, that there was evidence to go to the jury to prove that the plaintiff had surrendered the logs to the Messrs. Stevens and abandoned them entirely, before the defendants took them. But the Court ruled that there was not sufficient evidence to authorize a verdict against the plaintiff on this point, and declined to allow the question to be argued to the jury, and instructed the jury for the purpose of this trial, that they would not regard the logs as the property of the Messrs. Stevens.

The defendants further contended that if the jury should find that the Messrs. Stevens' claim on the logs was more than they were worth, with the other evidence in the case touching the right of Messrs Stevens, that then the plaintiff could recover nothing or only nominal damages. But the Court instructed the jury on this point, that the plaintiff was entitled to recover the full value of the logs, if any thing.

The defendants further contended, that it was a question of fact for the jury, whether the title of Rines to the logs had been lost before he sold them to the defendants; and the Court so instructed the jury, and further instructed them, that if the plaintiff once had possession of the logs, claiming them, and the defendants took and made use of them afterwards, the burthen of proof was on the defendants to show title in themselves, and that if Rines' testimony was believed by them, it proved that he had parted with all his title before he sold to defendants, that nothing passed to defendants by any of the transfers put into the case, and the plaintiff was entitled to recover the value of the logs, but that the credibility and correctness of his testimony was for their consideration, in connexion with the other testimony in the case, tending to impeach or corroborate it, and that this was the great point in the case for their consideration.

The defendants further contended, that if Rines had not parted with his title before his sale to the defendants, that if his title was transferred to the defendants, the plaintiff could not maintain trespass against the defendants ; and the Court so instructed the jury.

On the evidence the plaintiff contended:

1. That Bartlett, by taking a negotiable draft and giving an absolute receipt for the stumpage, forever discharged it. .

2. That if Bartlett did not absolutely relinquish his lien on the logs, when he took said draft, he was bound in a reasonable time after said Stevens refused to accept said draft to elect whether to retain said draft, or his lien on the logs, and to notify I. J. Stevens of said election, and return said draft to him.

3. That by retaining said draft, and commencing an action upon it, he relinquished his lien.

4. That he relinquished said lien by attaching these very logs and other property of Isaac J. Stevens.

5. That Rines by taking an assignment of this draft, even if he did not take it in payment of his stumpage, with a knowledge that it was taken by Bartlett for the stumpage and of the course that Bartlett had taken in relation to it, thereby ratified Bartlett's acts and became bound by them, and thus relinquished and lost his own lien.

6. That Rines by prosecuting the action on the draft to judgment, and taking execution, which still remains unpaid and has never been released or returned to I. J. Stevens, relinquished, or lost, their lien (if they then had any) on said logs.

7. That the permit gave no power to Rines to sell these logs for stumpage without judicial sanction.

8. That if the permit gave power to sell, the sale must have been made in good faith, free from suspicious circumstances, and that Rines' intention to become a purchaser, and the hasty manner in which the sale was made, and the low price, and the immediate sale by Rines & Griffin at an advance, rendered the sale invalid.

9. That if Rines agreed with Griffin before the sale, to be equally interested with him and stand equally with him afterwards, the sale was void.

10. If this agreement was not made till immediately after the sale, in the manner stated by Griffin, still the sale was void.

11. That the assignment of the permit by Comstock to I. J. Stevens & Co. did not convey any interest in these logs, or if any interest, only a pledge, and that was void for want of delivery; hence the sale to the defendants was void for want of a demand of payment of the plaintiff, and notice to him of the intended sale.

12. That if the Messrs. Stevens had an interest, still, the plaintiff being the general owner, such demand on him and notice to him were necessary.

13. That the appearance of Mr. Prentiss at the sale, on behalf of Mr. Stevens, was not sufficient to show that he had authority from Stevens to appear, or that he was notified seasonably by Rines of the intended sale.

14. The assignment by the proprietors to Rines, conveyed only the *stumpage* and not any interest in the logs.

15. That the amount of the stumpage on these logs, according to the Stackpole permit, was much less than the amount for which the logs were sold, and that the plaintiff at any rate was entitled to recover for a part of the logs.

16. That Rines abandoned his possession to Wadleigh, and never took possession afterwards, and thereby lost the claim on the logs.

17. That the spruce logs were not conveyed by the auction sale, and that the defendants were liable for them.

The presiding Judge sustained these positions so far as appears in the following instructions to the jury and no farther. That by the Stackpole permit the proprietors retained the ownership and control of the logs, subject to be defeated by complying with the terms of the contract; that if the stumpage was not paid so as to give a right in the other contracting party to control the logs, the proprietors would become the absolute owners of the logs, after the failure of the other party

to comply; that their assignment to Rines gave him the same control over the logs which they had; that if Rines had not before done any thing to relinquish his claim, he could dispose of the logs as he thought proper, either at public or private sale; that it was no matter if the logs were struck off too soon, as the conduct of Rines in relation to the sale and his interest in it, would not vitiate the sale; that it was for the plaintiff, as between him and Rines, to show that Rines had received payment of the stumpage; that if Bartlett took the draft in payment of the stumpage this did not injure Rines, unless he took it also in payment; that Bartlett's retaining the draft and commencing an action and attaching the logs and other property, and Rines' taking an assignment of the draft and action, with the knowledge of these facts, and continuing to prosecute the action, did not destroy Rines' claim on the logs, if he in fact took the assignment as collateral; but were proper circumstances for the jury to consider in determining whether he received the draft in payment or as collateral; that if Rines received the draft in discharge of the stumpage, his claim on the logs could not be afterwards resumed as against the plaintiff without his consent; that they must determine, from the testimony whether Rines received the draft in payment; and that as the assignment did not express the consideration, that if the testimony of Rines was out of the case, the plaintiff could not recover, provided the defendants had shown to the satisfaction of the jury, that they had acquired the right which Rines derived from the proprietors.

The verdict was for the defendants.

To the rejection of testimony offered by the plaintiff, to the admission of testimony objected to by the plaintiff, to the overrulings of the plaintiff's positions; and to the instructions of the Court to the jury, the plaintiff excepted.

*Prentiss,* for the plaintiff, furnished a written argument of more than sixty pages. An abridgment could not do it justice, and the whole cannot be published. He cited, in support of the positions taken, 2 Greenl. 121; 2 Dallas, 63; 16 Ves. 276; 9 Greenl. 125; 5 Pick. 46; Story on Bailm. 241; 2

Kent, 638; 21 Pick. 230; Montagu on Liens, 215; 1 Mason, 212; 1 Johns. R. 34; 10 Johns R. 104; 15 Johns. R. 247; 5 Pick. 178; 8 Mass. R. 150; 20 Pick. 399; 10 Mass R̈. 155; 4 Mass. R. 620; 4 Mass. R. 443; 3 Pick. 38, 365; 8 Pick. 408; 4 Pick. 220; 2 Kent, 614; 12 Mass. R. 60; 1 Metc. 39; Com. on Con. 23; 2 Metc. 260; 6 Verm. R. 448; 7 Pick. 52; Story on Bailm. 209, 213; Story's Eq. 317, 319; Caines' Cas. in Er. 183; 2 Kent, 577; 1 Pow. on Mort. 3, 4; 4 Kent, 137; 6 Mass. R. 424; 15 Mass. R. 480; 1 P. Wms. 261; 1 Brown, 176; 3 East, 258; 1 Johns. R. 290; 4 Johns. R. 475; 1 Stark. Ev. 199; Phil. Ev. 39; 3 Greenl. 165; Greenl. Ev. 563; 2 Greenl. 64; Dougl. 56; 3 East, 366; 14 Johns. R. 82; 1 Marsh. 526; 2 Pick. 20; Greenl. Ev. 449; 4 Mass. R. 488; 2 Kent, 585; Story on Bailm. 238; 5 Bac. Abr. 165; 4 Kent, 159; 8 Pick. 73.

*A. G. Jewett* and *J. H. Hilliard*, for the defendants, furnished concise written arguments, citing 11 Mass. R. 27; 16 Maine R. 478; 6 Greenl. 200; 7 Greenl. 386; 18 Maine R. 357; 4 Mass. R. 683; 3 Fairf. 201; 8 Greenl. 30; 8 Pick. 51.

The opinion of the Court was by

Whitman C. J. — This is an action of trespass for taking and carrying away a parcel of mill logs. The plaintiff cut the timber, in the winter of 1834—5, on the land of certain proprietors, for whom one Stackpole was agent. Stackpole, as such agent, had contracted with one Bartlett to go on to the land, that winter, and cut and haul off timber; which was to become his, only, upon his paying at a certain rate per M. for what he might cut. Bartlett thereupon, as if owner of the soil and timber upon it, contracted with the plaintiff to go on and cut upon similar terms. This was, by the contract of Bartlett with Stackpole, wholly unauthorized; and the plaintiff, by going on and cutting, under such circumstances, became in strictness a trespasser; and could, therefore, under such circumstances, acquire no legal interest in the timber he might cut, as against the proprietors of the land. By his con-

tract he was not accountable to them; and there was no privity between him and them. Yet to maintain this action he must prove property in himself. To do this he contends, that the proprietors, or their assignees, have done certain acts, which recognized his cutting, as if under a license from them, upon the terms agreed upon between him and Bartlett; and upon an alleged payment to them, or their agent or assignee, for the timber cut upon those terms.

The defendants claim as vendees or assignees, under the proprietors of the land, and, as such, may maintain their defence, unless the plaintiff's allegations are sustained by his evidence; to do which the burthen of proof is upon him. It appears that one Rines, with certain other individuals, were co-tenants of the land on which the timber was cut; and that those individuals, on the fifteenth day of May, 1835, transferred and sold to him fifteen sixteenths of the timber cut during the previous season for cutting, "under the direction of Richard H. Bartlett," with whom the plaintiff had contracted as before stated. Rines, owning the other sixteenth part, thus became the owner of the whole, subject to such rights as pertained to those, who had cut the timber, whatever they might be.

There was evidence introduced by the plaintiff tending to show, that, while Rines so owned the timber, he recognized the right of the plaintiff to become the owner of it, upon his paying what, among lumbermen, has acquired the appellation of stumpage, viz., the value of the timber when standing; and of such recognition there does not seem to have been any question made at the trial. The plaintiff further introduced evidence, which he contended shew also, that Rines received full satisfaction for the value of the timber as estimated before it was cut. It appeared, that Bartlett had taken a negotiable draft of one Isaac J. Stevens on one Nathaniel Stevens for that amount, but the evidence tended to show that it was with an express understanding that, if not accepted by the drawee, the claim upon the timber was not to be affected; that the same draft, not having been accepted, Bartlett in-

Comstock *v.* Smith.

stituted a suit thereon against the drawer to recover the amount drawn for, and attached the logs in question as the property of the drawer; that Rines afterwards, while the action was pending upon the draft, took an assignment of it from Bartlett; and gave him, as he (Rines) testified, a receipt in full for the stumpage. In this wise, as the plaintiff contended, the stumpage had been paid for, and that thereupon the timber became his.

On the other hand, much evidence was introduced by the defendants, tending to show that the testimony of Rines was not to be relied upon, and that in fact he never gave any such receipt as he testified that he did; but that he retained his ownership of the timber, unaffected by the assignment of the draft, no part of which had ever been paid. And the question whether Rines received the assignment of the draft in full discharge for the stumpage, was, in the instructions of the Court to the jury, explicitly stated to be for their consideration; and if it was so received, they were further instructed, that the verdict should be for the plaintiff; otherwise for the defendants. The jury thereupon returned their verdict for the defendants. This question of fact, therefore, would seem to have been deliberately settled; leaving no ground upon which the plaintiff can rest for the support of his action.

He insists, however, that the finding of the jury was not warranted by the evidence; and has filed a motion for a new trial upon that ground; but it was a matter of fact; and, as such, exclusively within the province of the jury to be decided. In such cases the Court cannot interfere to subvert their doings, but upon the most manifest delinquency on their part, of which the case furnishes no exhibition.

But the great reliance, on the part of the plaintiff, to have the verdict set aside, would seem to be upon his exceptions; the first in order of which is, that the deposition of I. J. Stevens, offered by him, was ruled inadmissible. Whether this ruling was correct or not the bill of exceptions does not enable us to decide. It merely sets forth that the deposition was offered, and, on being objected to by the defendants, was ex-

cluded. It is not set forth that the rejection took place on account of interest in the deponent, or of informality in the caption, or for irrelevancy. We are, however, in the arguments of counsel, informed, that it was on account of interest in the deponent. This is not enough. It should have appeared in the exceptions how, and in what particulars the plaintiff was aggrieved. If the witness was disinterested, and his rejection was upon the supposition, that he was interested, still the plaintiff might not have been injured thereby.

Upon an inspection of the deposition on file we have been enabled to see, if it had been admitted, it could not have affected the result. The supposed settlement with Bartlett, to which this deponent testifies, was not obligatory upon Rines, who had become the owner of the stumpage, as the jury have found ; and there is no other material fact contained in the deposition, not abundantly substantiated without it. In such case the plaintiff could not be considered as aggrieved by its exclusion ; and it would be improper that the verdict should be disturbed for that cause.

We do not deem it necessary to examine minutely all the twenty-six points raised under the exceptions, with their numerous subdivisions, ingeniously and elaborately argued by the counsel for the plaintiff, with a citation of authorities indicative of a widely extended and praiseworthy research. Many of his propositions are based upon the hypothesis, that the interest, which the owners of the land had reserved to themselves, was in the nature of a lien or pledge, and that such lien or pledge was, by certain acts of the owners or their agents, virtually discharged. These sales of stumpage, in this State, are but conditional, viz. if certain payments be made, and certain other terms be complied with, the sale will become absolute ; otherwise it will be void. If the plaintiff, in this case, had contracted with the owners of the land, or their authorized agent, to cut the timber, an interest in it, against the owners, could not have vested in him, but upon strict performance of the conditions named in his contract ; or a waiver of performance on their part. If such had been the contract the main

condition, the payment of the value of the timber, as when standing, has never been performed. Here there was no contract with the owners, which they could have enforced; and the plaintiff had no specific agreement with them, which he could have enforced. Every thing on his side rests upon implication; and, surely, a very clear case of this kind should be made out to authorize a Court to conclude, that he had become absolutely the owner of the timber. Whoever finds himself in difficulty for want of due precaution should calculate that he must abide by the consequences, and not look to Courts for relief. The plaintiff himself, according to the testimony of one of the witnesses, was sensible of his failure, and of his consequent forfeiture of his right to the timber.

The position, that the acceptance of negotiable security for an existing indebtedness by simple contract, is to be deemed payment, may be, and doubtless is, sustained by the decisions in this State and in Massachusetts; but it is competent to the parties to agree that it shall be otherwise deemed. They may agree that it shall be received as security merely collateral; and proof by parol may be admitted to show, that it was so taken; and, when so taken, it is the right of the holder to endeavor to make it available for the purpose for which it was taken, by suit or otherwise; and failing of success, he may resort to his original security; and this without previously restoring the collateral security.

The attachment of the timber in question, in the suit against the drawer, by Bartlett, is much relied upon in argument by the plaintiff's counsel. But such attachment could not make it the property of the plaintiff. He was, so far as appears, a stranger to that suit. It was a matter *inter alios*. Rines, when he had taken an assignment of the draft, and had obtained judgment, did not levy upon the timber, but resorted to his original ownership, as well he might, if he had not accepted of the assignment in full discharge of his claim, which by the finding of the jury it seems he had not.

The circumstances attending the auction sale, which were introduced at the trial, tended only to show that Rines recog-

nized the right of the plaintiff to become the owner of the timber upon the payment of its value when standing. It was a useless formality; unless he had it in view, as equity perhaps would have dictated, after deducting his claim, to have restored the surplus to the plaintiff; and if this were his purpose he might as well have sold at private sale in the first instance as finally. The several portions of the testimony objected to by the plaintiff could not have varied the result.

The exceptions and motion for a new trial are overruled; and judgment must be entered on the verdict.