## Case No. 10,689.

PALMER et al. v. DALLET et al.

[3 Pa. Law J. 416.]

Circuit Court, E. D. Pennsylvania. 1844.

APPEAL—ADMIRALTY—EFFECT OF DECREE OF DISTRICT COURT.

The decree of the district court, where no question of law is involved, is entitled to the same weight as a verdict in a suit at law, not to be disturbed unless it is contrary to the clear result of the evidence on the facts in issue.

[Appeal from the district court of the United States for the Eastern district of Pennsylvania.]

In admiralty. The complainants filed a libel in the district court on the 17th of June, 1841, claiming the sum of $284.90 with interest, being the amount paid by them for repairing damages to their brig, occasioned by collision with the Orion, at the Chester piers, in January, 1840. From various causes the hearing was postponed until November, 1842, when after argument by Haly, for the libellant, and William G. Smith. for the respondent, the district judge (Randall) dismissed the libel, without costs. [Case unreported.]

From this decree the libellant appealed to the circuit court, where the cause was again heard, and the following opinion delivered by

BALDWIN, Circuit Justice. This is an appeal from a decree of the district court sitting in admiralty, dismissing the libel of the appellants for damages occasioned by a collision between the two vessels at Chester, in January, 1840, in which both sustained considerable injury. The evidence taken in the district court and returned on the appeal was voluminous, and, as is usual in such cases, there was much discrepancy between the statements of the occurrence by the persons on board of the respective vessels. The evidence on each side taken by itself was sufficient to justify a decree, but taken together presented a doubtful case. The testimony of

the witnesses who were present, and saw the collision from other vessels, was in favor of the respondents, but not of that decisive character as to make out a clear case in their favor. There were some strong circumstances in evidence in favor of the libellants, but their effect was so far neutralized by evidence on the other side as to leave it doubtful whether the vessel of the respondents was an offending one at the time of the collision. The case was one which I should have left to the jury had it been a suit at law in this court, and should not have granted a new trial on whatever side they would have given their verdict.

In deciding on appeals from the district court, where no question of law is involved, I have always considered the decree of the district court as entitled to the same weight as a verdict in a suit at law, not to be disturbed unless it is contrary to the clear result of this evidence on the facts in issue, though in my opinion a decree of a different kind would have better met the justice of the case. The reasons for this course are stronger in appeals than jury trials, for, if the decree is reversed, the consequence is not merely a new trial, but a final decree on the merits for the other party. The present is a case of this description. It turned wholly on the evidence, and on a careful examination of it, in and out of court, I think the merits so doubtful that the decree below ought not to be disturbed. It is accordingly affirmed, with costs.

PALMER (DALY v.).   See Case No. 3,552.

PALMER (DAVIS v.).   See Case No. 3,645.

PALMER (DENNER v.).   See Case No. 3,788.

## Case No. 10,690.

PALMER et al. v. ELLIOT et al.

[1 Cliff. 63.] 1

Circuit Court, D. New Hampshire.   May, 1858.

PARTNERSHIP — DORMANT PARTNER — LIABILITY — PAYMENT — PRESUMPTION AS TO RECEIPT OF NOTE.

1. Where two persons by virtue of a private agreement, became partners as to third parties, the contract specifying no firm name, but allowing each partner to purchase goods on his own individual credit, and designating one of the two to transact the business, while the connection of the other was kept secret, *held,* that the dormant partner was not liable, on a note, for goods put into the concern by the one who conducted the business, and signed with his name, where the signature was not intended as that of the firm, and the payee was ignorant of the relation of the parties.
[Cited in Courve v. Case, 79 Wis. 356, 48 N. W. 480.]

2. In Massachusetts, when a debtor gives his own negotiable bill or note for a pre-existing debt, it is prima facie evidence of payment.
[Cited in Bantz v. Basnett, 12 W. Va. 785.]

1 [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

3. But this presumption may be rebutted by circumstances showing that such was, not the intention of the parties,—or if the paper accepted is not binding upon all the parties previously liable,—or where there is fraud, concealment, misapprehension and great unfairness in giving the security.
[Cited in Ex parte First Nat. Bank, 70 Me. 380.]

4. Under such circumstances the holder is at liberty to surrender the note to the party who gave it, or place it on the files of the court for that purpose, and will then be entitled to recover on the original contract.

This was an action of assumpsit [by Julius A. Palmer and others against William H. Elliot and Stanford Hovey] and was submitted upon an agreed statement of facts. With the exception of one or two particulars the material circumstances were the same as in the case of Bigelow v. Elliot [Case No. 1,390]. The points of difference were these: the declaration in this case contained three counts, two of which were the same as those in the case above mentioned, namely, one being for goods sold and delivered, and the other upon an account annexed, which embraced six charges. Of these, the first and third were included in the note declared on in the third count. The note was given by the last-named defendant, and bore his signature alone. All the goods were purchased by him, and the plaintiffs gave to him exclusively the credit for the amount included in the note, they having no knowledge of the other defendant's interest in the store or the goods, or of the existence of any private agreement between the two defendants. Moreover, the last-named defendant purchased the goods and gave the note without consultation with his associate, and without his knowledge. As in the other case, the second defendant, Hovey, the maker of the note, was defaulted, and Elliot pleaded the general issue.

It was contended that the defendants were not partners, but the court held this point to be decided by the case above referred to, and held that the plaintiffs were entitled to recover so much of the amount claimed as was not included in the note set forth in the third count.

Clark & Smith, for plaintiffs.
Morrison & Stanley, for defendants.

CLIFFORD, Circuit Justice. On the present state of facts it is impossible to say that Hovey, in signing the note, used the name affixed to it as a partnership name. He professed to act for himself, and pledged his own credit; and it clearly appears, from all the circumstances disclosed in the agreed statement of facts, that he signed the note, using the name affixed to it as his own personal designation, and it was so understood by the plaintiffs at the time the goods were sold and the note given. Two or more persons carrying on a trade or business may adopt the name of one of their number as a partnership name, or they may even adopt a

fictitious name, and the use of such name by one of the company in transacting the proper partnership business will bind the firm. When the firm name is the same as that of one of the individuals composing the firm, a material distinction arises, which it becomes important to notice, especially if that individual member of the firm is also separately engaged in a similar pursuit. In such cases the mere proof of the signature to a bill or note, unaccompanied by any circumstances tending to show that the name affixed to it was used and signed as the firm name, is not in general sufficient to entitle the plaintiff to recover against the firm, and some courts and text-writers have held that it is not even prima facie evidence that it was a transaction appertaining to the partnership business. Pars. Mer. Law, 177; Manufacturers' & Mechanics' Bank v. Winship, 5 Pick. 11; U. S. Bank v. Binney [Case No. 16,791]; Miner v. Downer, 19 Vt. 14. Other cases assert the doctrine that when it does not appear that the individual whose name is used has been engaged in business on his private account, and it appears that the name is the firm name, it will be presumed that it was used for the firm. Trueman v. Loder, 11 Adol. & E. 589; Bank of Rochester v. Monteath, 1 Denio, 402; Bank of South Carolina v. Case, 8 Barn. & C. 427; Palmer v. Stephens, 1 Denio, 479; Miller v. Manice, 6 Hill, 114. Applying these principles to the facts of this case, it is quite certain that the plaintiffs cannot recover upon the third count, as the agreed statement clearly shows that the defendant who signed the note used the name, not as a partnership name, but as the one properly describing himself; and, as both parties so understood it, the law cannot give any other character to the transaction. Moreover, these defendants had not adopted any firm name whatever, and, what is more, it was expressly agreed between them that each should purchase goods in his own name and on his own separate individual credit, and it does not appear that either had ever departed from the course which both alike had contracted to pursue. Another consideration presented is, whether the plaintiffs may not recover the whole amount claimed under the general counts. Both of the items of charge included in the note are sued for in those counts. Whether they can so recover or not, depends upon the question whether the note in suit was received by the plaintiffs in payment of that part of the account for which it was given. At common law a promissory note, given for a simple contract debt, does not operate as a discharge of the original obligation, or constitute a payment of the original debt, unless it affirmatively appears from the evidence that such was the intention of the parties at the time it was given, and that is the rule which prevails in most of the states composing our Union. But this contract was made in the commonwealth of Massachusetts, and the courts of that state have adopted a different rule. It is there held that, when a debtor gives his own negotiable bill or note for a pre-existing debt, it is prima facie evidence of payment; and the reason assigned for the rule is, that otherwise the debtor might be obliged to pay the debt twice. Maneely v. McGee, 6 Mass. 143; Thacher v. Dinsmore, 5 Mass. 299. Her courts also hold that if such bill or note is given for a part of the debt, it is deemed payment of such part, even though the debt is collaterally secured by a mortgage. Ilsley v. Jewett, 2 Metc. [Mass.] 168; Fowler v. Bush, 21 Pick. 230; 2 Greenl. Ev. § 520. Some exceptions and qualifications have been admitted to this rule in the jurisdictions where it prevails, which it becomes important to notice in this investigation. All the cases allow that the reception of the bill or note is nothing more than prima facie evidence that it was received in payment, and they generally admit that such prima facie presumption may be rebutted and controlled by any circumstances which show that such was not the intention of the parties. It was so held in Watkins v. Hill, 8 Pick. 522; and such appears to be the settled doctrine in all the jurisdictions whose courts of justice have departed from the common-law rule upon the subject. Butts v. Dean, 2 Metc. [Mass.] 76; Reed v. Upton, 10 Pick. 522; Jones v. Kennedy, 11 Pick. 125; Comstock v. Smith, 23 Me. 202; Gilmore v. Bussey, 12 Me. 418. Some courts have gone further, and held that the presumption of payment may be controlled, not only by the agreement of the parties, but by proof of a contrary usage, or by any circumstances inconsistent with the presumption. Varner v. Nobleborough, 2 Me. 121; Descadellas v. Harris, 8 Me. 298. In the course of the numerous decisions which have grown out of the departure from the common-law rule, certain exceptions or qualifications to the rule have been recognized and established by the courts in jurisdictions where the opposite rule prevails, to which it may be useful to advert on the present occasion, so far as they have an immediate bearing upon the question under consideration. One of those exceptions is, that if the negotiable paper, whether bill or note, was accepted in ignorance of the facts, or under any misapprehension of the rights of the parties, the rule that it shall be held prima facie to have been received in payment of the pre-existing debt does not apply. French v. Price, 24 Pick. 13. So, if the paper accepted is not binding upon all the parties previously liable, it is held that the presumption of payment may be considered as repelled. Melledge v. Boston Iron Co., 5 Cush. 158; Fowler v. Ludwig, 34 Me. 461. Reference to one other of these exceptions will be sufficient at the present time. All the well-considered cases agree that, if the transaction is tainted with fraud, or if it appears that there was any concealment, misapprehension, or unfairness, in giving or passing the new security, proof of such facts,

or any one of them, will be sufficient to repel the presumption, and to entitle the creditor to recover upon the original contract. Assuming the law to be as stated, of which there can be no doubt, it is obvious what the result must be in this case. Both of the defendants, in contemplation of law, were originally liable for the charges in the account which were included in the note described in the writ; and the note itself, as there described, furnishes plenary evidence that it was only executed and signed by the defendant, who is defaulted. And if so, it proves to a demonstration that all the parties originally liable are not bound by the new security; and, what is equally decisive of the question, the agreed statement shows that the plaintiffs, in accepting the note, acted in utter ignorance of their rights in the premises, and without any knowledge whatever of the actual relations which existed between these defendants. Without more, these two facts are sufficient to repel the presumption that the note was received in payment of that part of the account for which it was given. But it also appears that it was given under circumstances of concealment and great unfairness on the part of the defendant who gave it, if not of actual fraud, and therefore falls within the exception admitted by all the well-considered cases upon the subject. Under the circumstances, the plaintiffs are at liberty to surrender the note to the party who gave it, or to place it on the files of the court for that purpose, and then they will be entitled to judgment for the amount specified in the agreed statement, excluding the note, and for the amount of the charges for which the note was given, with interest on the same from the date of the writ, and for their costs.