THOMPSON, J.
The two questions arising out of this case, and made on the part of the defendant, are, 1. Whether James Hussey, was a competent witness ; 2. Whether the defendant is bound by the contract Hussey made with the plaintiff, and to what extent.
I think the master of the vessel was a competent witness. His testimony would tend equally to charge himself on a.ny event: and although, perhaps, he might himself have objected against being examined, yet, as his interest between these parties is equal, the objection .against him could, with propriety, be made by neither. The witness was liable to the plaintiff on his bill of exchange which he had drawn on the defendant, which had not been accepted : and, if he had borrowed the money from the plaintiff in capactiy of master of the vessel of which the defendant was owner, and had misapplied that money, he would be responsible to the defendant for such misapplication. He was therefore competent, not on the ground of necessity, *but because, as between these parties, he stood perfectly indifferent on the score of interest, which must exclude every presumption of bias on his mind With respect to the second question, there is no doubt but the master of a vessel may make his owners personally responsible for necessary expenditures, relating to the usual employment of the vessel. The master is held up to the world as the agent of the owners. His character and situation furnish presumptive evidence of authority from the owners to act for them in such cases. But in order to make the owners responsible, it is necessary the supplies furnished the master should be reasoably fit and proper for the occasion; Abbott, 108; or that the money advanced to him for the purchase of them, should at the time, appear to be wanting for that purpose; the contrary would fur *81 nish a strong presumption of fraud and collusion on tbe part of tbe creditor. The court, however, I think, ought not to be scrupulously nice in requiring the creditor to show this necessity, to the full extent of the money advanced. The master is elected and appointed by the owners, and by their appointment of him to a place of trust and confidence, (1 Bro. Parl. Cas. 284,) they hold him forth to the public as a person worthy of such trust and confidence. The exist ence and extent of such necessity were proper questions for the determination of a jury. The master swears that the money borrowed was for the purpose of paying the necessary expenses of the ship, and the exporting duties of the cargo, the whole of which has been delivered to the defendant, together-with a full account of all the transactions. So that if all the money borrowed was not expended for the purposes for which it was loaned, it has been accounted for by the master. There can be no doubt, I think, that the captain had a right to borrow money on the credit of his owner, to pay the necessary expenses of the ship, and the money applied to the payment of the exporting duties was clearly for the benefit of the defendant; he was interested in the outward cargo, and it is fairly to be presumed he was also in the return cargo. At any rate the whole of the cargo, upon which the exporting duties were paid, has been delivered to the defendant, and upon which he will have a lien for the repayment of the money against any claim on the part of the assignees of Yard. *There appears some contradiction between the master and mate as to the extent of the necessity of the expenditures; their credibility was, however, a proper subject for the jury, with whose decision I see no reasonable ground for dissatisfaction. I am therefore of opinion that the plaintiff ought to have judgment.
Kent, J.
It will not be requisite for me to examine the first question, because, admitting Captain Hussey to have been a competent witness, I am of opinion the plaintiff is *82 not entitled to recover. There was no special authority given to the captain to bind the owner of the vessel. All the power that he had was derived from his general and ordinary character as master; and in that character, he can only bind the owner of the ship to contracts relative to the usual employment of the ship, and the means requisite for that employment. Abbott, 83, 92, 94, 97; Abbott, 102 ; 1 Bro. Pari. Gas. 284. This power relates only to the carriage of goods, and the supplies requisite for the ship. The master quoad the cargo is limited to the duties and authorities of safe custody and conveyance* and, except in cases of unforseen necessity, he is a stranger to the cargo beyond those purposes. 3 Rob. Adm. Rep. 257, 258. The contract, in the present case, was not respecting the employment of the ship. It was wholly distinct from it. The payment of the export duties at Port Republican was made by the master, in the assumed character of agent respecting the cargo, and whether well or ill assumed, is perfectly immaterial as it concerns the owner of the ship. He can only be affected by contracts relative to the master’s trust, who is set over the ship, and not over the cargo; and the owner of the ship cannot be bound by any contract of the master concerning the purchase of goods, or the charges attending them. If this had been a contract concerning the destination of the vessel from Port Republican, the time of sailing, or the amount or species of goods she was to carry; or if it related to the repairs of the ship, or the stores and provisions requisite for the voyage, the question would have been very different. But it would be of most dangerous consequence to shipowners, to be held responsible for all the master’s contracts and loans, relative to the goods on board; and it would be. unjust on principle, because such contracts are not within the purview of the master’s trust. It is very clear, in *this case, that the loan of the plaintiff was not requisite for the ship’s expenses: the master had funds in hand more than sufficient for all such purposes. The loan was for the pay *83 ment of tbe export duties on tbe sugar and logwood, and tbe sugar and logwood were purchased with tbe proceeds of tbe outward cargo belonging, to Yard, and were delivered on board for and on bebalf of Yard, and, consequently, tbe property vested in bim, and went to bis assignees. Tbe delivery of the sugar and logwood to tbe defendant, on tbe ship’s arrival at New York, cannot alter tbe nature and operation of the contract of loan; for tbe defendant must be responsible to tbe assignees of Yard for tbe amount of that cargo. It was formerly held^ (Johnson v. Shippen, per Holt, Cb. J., 2 Ld. Raym. 982; Salk. 35 ;) that tbe master of a ship bad no credit aboard, but upon the security of hypothecation; that he could not hind the owners personally, and that the hypothecation must have been for necessaries for tbe ship. But in tbe case of Carey v. White, Abbott, 102; 1 Bro. Parl. Cas. 284, it waS established, after great litigation, in the bouse of lords, that tbe owners were liable for money borrowed by the master for necessaries for the ship, but it must appear that the money Yas wanted for tbe necessary use of tbe ship, and this, I apprehend, is the extent to which the owners liability has hitherto been carried. I do not think that tbe receipt of the cargo by the defendant makes any alteration in the case. The cargo did not belong to the plaintiff, and the acceptance of it cannot, I think, be construed into any affirmance of the loan, because there is no necessary connexion between the cargo and the loan, and the defendant had a right to receive and detain the cargo, as a security for the freight, and it was prudent for him to do so since Yard, to whom the cargo belonged, had already become a bankrupt. But there is another fact which completely does away this inference of any affirmation of the loan, and it is a fact direct and unequivocal; and this was the refusal to accept the bill of exchange. For these reasons I am for the defendant.
LIVINGSTON, J.
Two questions are made by this case; 1. "Whether Hussey could be examined without a' release from the plaintiff; and, 2d. Whether his contract was binding on the defendant. Unless masters be admitted as witnesses in cases of this kind it will be extremely difficult to ascertain whether such a necessity existed as would , justify their ^taking up moneys on their owners’ account. I will not, however, say, that from necessity this testimony ought to have been received; because, as the witness had no interest, I see no reason why he should have been excluded. In any event, he stood indifferent between these parties, being liable either to pay the money received to the plaintiff,‘or to refund it in another action to the defendant. Thus in 7 D. & E. 481, in noil's, it appears, that a master who had, as in this case, drawn a bill on his owners, was a witness between the bill-holder and his owners, he being liable, in Lord Kenyon’s opinion to the plaintiffs on his bill of exchange, and to the owners if the money was borrowed improperly, or for himself. As to the damages for which Hussey may be liable on this bill, it does not appear that any are due; and if that be the case, I am not certain that the defendant, if he wrongfully suffered the bill to be protested, is not liable for them. If not, what is to prevent an action on the bill against Hus-sey, in which he would be entitled to a credit only for the sum recovered in this suit. I think, therefore, he was a competent witness. As to the second point, it is not easj to conceive a case of stronger necessity for making the loan than is here presented. It was the only way of securing the freight, and most manifestly for the owner’s benefit. Yard being a bankrupt made no difference; for his as-signee could not get at this property without discharging the freight, and the moneys paid for exportation duties. This lien existed against all the world. It is true, the cases generally speak of moneys borrowed for repairs and necessaries, but the same reasoning applies here. This was money borrowed for the benefit of the owners, and in relation to the voyage then pursuing, and the whole transac *84 tion being in good, faith, it would be hard to say the master shall refund it himself. But without deciding this point, it appears that the cargo brought back was received by the defendant, who, it is probable was immediately in formed of what his captain had done. He must, therefore, for aught that appears to the contrary, have in his hands the very money for which this action is brought, and, at any rate, the acceptance of the cargo, under these circumstances, must be regarded as an affirmation of the captain’s conduct. The plaintiff is, in my opinion, entitled to judgment.(a) ,[1]
New trial refused.

 Wherever a witness is, in all events, liable to one or other of the parties to a suit, and his testimony goes only to determine to which he shall be so liable, lie is competent. Therefore, in an action by the holder of a bill against the drawer, the acceptor is a good witness to prove he had no funds of the drawer’s in his hands at the time the bill was drawn. Staples v. Okines, 1 Esp. Rep. 322. So a payee of a bill of exchange, drawn without consideration, is competent, in an action by his endorsee against the maker, to prove the time of his endorsement, and the value given for it; because he is liable to the drawer for money paid if the verdict be against him, and if it be for him, to the endorsee on the endorsement, Shuttleworth v. Stevens, 1 Camp. 407. But where tne payee of such a note is discharged under an insolvent or bankrupt law, posterior to its date, he is not a competent witness for the defendant maker, because he is not liable to the plaintiff endor-' see, and would be to the defendant if a verdict went against him. Maundrell v. Kennett, ibid. 408, n. So an endorsor of a bill who has received money from the drawer to take it up, may prove the payment of the bill in an action by the endorsee against the maker; for he is liable, on liis endorsement, to one party, and to the other for money had and received; the extra liability to the costs o£ the action in which he testifies is of no importance. Birt et al v. Kershaw, 2 East, 458; Ilderton v. Atkinson, 7 D. & E. 480, overruling, in this respect, Buckland v. Tankard, 5 D. & E. 578; see Renaudey. Croken, 1 Caines’ Rep. 168, and M'Leod v. Johnson, 4 Johns. Rep. 126.

 See New York Digest, title Witness The competency of witnesses, &c., and the rules heretofore existing as to witnesses, have been materially altered. Under the Code of Procedure, a party to the action may be examined as a witness at the instance of the adverse party, or of any one of several adverse parties, and may be compelled to testify, &o. See Code of Procedure, p. 153, § 390; [seo. 344,] see Bank of Charleston v. Emerick Davenue, 2 Sandf. 718; Park v. Mayor, &c., of the City of New York, 3 Com. 489; Pillow v. Bushnell and others, 4 Howard, 9; Brockway v. Stamton, 2 Sandf. 640; Anderson v. Johnson, 1 Sandf 713; 2 Code Rep. 66; 2 Code Rep. 15; 2 Sandf 661; and for certain purposos a party may offer himself as a witness. See Myers v. McCarthy, 2 Sandf. 399, 2 Code Rep. 143; see examination of co-plaintiff or co-dofendent, Code of 1849, and amendments thereto passed 1851; Code of Procedure, § 391, p. 155. Por authorities on the above, see 4 How. 212 ; 5 How. 223 ; 5 How. 296; 5 How. 401, and 5 How. 281. Code of Procedure, p. 156, says, No witness to be excluded by reason of interest, § 398; [sec, 351,] and also shows to whom this rule does not apply in § 399, [sec. 352.] Por decisions under Code Of 1848 and 1849, see 1 Barb. 151, S. C. 3 How. 401, S. C. 1 Code Rep. 108, 2 Code Rep. 16, 5 How. 8, also see 6 Barb. 666. By sections (of Code) 64, sub. 15, this applies also to justices’s courts. See also different decisions and opinions as to competency and incompetency, Pillow v. Bushnell, 2 C. R. 19, 4 Pr. Rep. 9, 1 C. R., 133, 7 L. O. 225, 1 Code Rep. 123; Huffman v. Stephens, 2 C. R. 16, 1 C. R. 113 ; Farmers Bank v. Paddock, 1 C R. 81, 3 How. 401, 1 C.R, 108, 1 I. O. 139 2 C. R. 33.