## Case No. 5,163.

### FURNISS et al. v. The MAGOUN.

### BUJAC v. SAME.

[Olcott, 55.] [1]

District Court, S. D. New York. Nov., 1844.

R. J. Dillon, for libellants, Furniss & Co.

F. R. Tillou and F. B. Cutting, for claimant and owner.

Charles C. Anderson and James A. Bayard, for Bujac.

[1] [Reported by Edward R. Olcott, Esq.]

BETTS, District Judge. The defence set up against the hypothecations in suit contests the validity of both bonds, upon the ground that the repairs and expenditures upon the vessel were unnecessary, and that the master had other resources sufficient for her actual wants, and had no authority to resort to a bottomry for other than necessary supplies or expenses connected with the voyage, and that he obtained the money for other objects and purposes. No misconduct or fraud is imputed to the master in the pleadings, and no proof has been adduced to show a misapplication of the funds raised, or that he had any freights which the brig had earned previous to her bottomry. The master had been in command of the brig for three or four years, and enjoyed the full confidence of her owners. Bujac also controverts the validity of the bottomry to Furniss & Co., and claims the priority of his hypothecation.

The cause has been argued with great ability and a thorough examination of the facts and authorities bearing upon the questions raised on the issues. Two preliminary objections have been interposed by the claimant and owner, either of which, if sustained, may bar the action in the case to which it applies. It was insisted, that at the time of filing the libel in Bujac's case, the bond had not become absolute and suable, the condition being, that the sum received should be paid at or before the expiration of ten days after the arrival of the vessel in New-York, whilst the action was commenced previous to that time. This objection, which is in the nature of a dilatory plea, should have been raised on the return day of the warrant of arrest by way of exception. It does not go to the merits of the action, but merely alleges the prematurity of the suit, and amounts to no more than the dilatory or declinatory exception of the civil law. Browne, Civil & Adm. Law, 363; Dunl. Adm. Pr. 192. Moreover, when the claimant intervened and filed his claim, the bond had become absolute, and the vessel or her proceeds was then under actual arrest and in custody. She had been libelled and attached in this court on a suit for seamen's wages for the same voyage, and had been condemned and sold in that action, and her proceeds paid into court. These are adequate reasons for disregarding exceptions to the action of a merely formal nature, and first raised in the case on the hearing. The claimants may well be deemed to have acquiesced in the antecedent proceedings. The Neptune, 3 Hagg. Adm. 132.

An objection was also raised to the right of a mortgagee to intervene in an admiralty case and contest the validity of these hypothecations. As this point was not suggested on the argument, and not put forth in the pleadings, it would not be now regarded by the court, if it supplied sufficient cause for the exclusion of the claimant. But as a mere defect of pleading might be remedied by an amendment, it is proper to observe, that all holders of liens on a vessel or her proceeds, are competent parties to contest, in admiralty, the titles or claims of other lien holders upon the fund or ship. 3 Hagg. Adm. 331.

The second preliminary point is to the competency of the master to be a witness for the libellants, notwithstanding the release given by them on the hearing. His testimony is urged to be indispensable to the libellants, as without it they have failed in establishing the preliminary facts upon which their right to a decree is dependent. The production of the bottomry bond is not of itself sufficient proof of those facts as against the claimant and owner. It must be shown by extraneous evidence that the advances were made for repairs or supplies necessary for the instant use of the vessel, or effectuating the objects of the voyage, and that they could not have been raised otherwise than by resorting to a bottomry. The Aurora, 1 Wheat. [14 U. S.] 96. It was insisted that the master had a direct interest in the suit, which was not removed by the release, as, if the libellants did not succeed, he would stand liable to them personally for the debt. And the case of The Fortitude [Case No. 4,953] was relied upon as sustaining the objection. This case is in conflict with Evans v. Williams, 7 Term. R. 481, note; Milward v. Hallett, 2 Caines, 77; and Rocher v. Busher, 1 Starkie, 27. And the eminent judge speaks with great reserve in giving his decision in the cause. He remarks, "I am ready to confess that I am not confident that this opinion rests upon grounds so clear that it ought not to yield to a settled course of practice; and I greatly fear that there is no au-

thority which directly sustains it." It seems to me that the opinion of Judge Thompson, in Milward v. Hallett, presents the true rule upon this point, upon reason and authority. The interest of the master is balanced. If the libellants could recover of him upon the bond, for advances necessary for the ship, he would have his action over against the owners for the moneys so employed. He was merely an agent acting within the line of his duty, and if made liable in the first instance on his contracts for the loans, he would be entitled to indemnity and reimbursement by the owner. This interest, indeed, leans rather to the owner than to the libellants, for if the bottomry contracts are defeated by his testimony, his liability to the lenders would be discharged by their release, and they be limited to their rights against the vessel and owner for the moneys advanced for the necessary refitment of the vessel (U. S. v. The Kitty [Case No. 15,537]; Rucher v. Conyngham [Id. 12,106]), and the master would only be answerable to him for integrity and good faith in his conduct. The admissibility of the master as a witness to bottomry contracts is placed by the judges sometimes on the necessity of the ship. Judge Livingston says, unless masters be admitted as witnesses in cases of this kind, it will be extremely difficult to ascertain whether such a necessity existed as would justify their taking up moneys on their owner's account. 2 Caines, 77. The objection to the competency of the witness cannot, therefore, prevail; it can, at most, only go to his credibility.

There can be no doubt of the authority of the master to borrow money on bottomry of the vessel. Abb. Shipp. (Ed. 1829) 117–131; Curt. Merch. Seam. 175. The previous contingencies upon which his power may be exercised embrace his destitution of funds in foreign ports, and all the occasions occurring abroad, which render money necessary to enable him to complete the enterprise in which the vessel is engaged, whether the necessity arises from an extraordinary peril or misfortune, or from the ordinary exigencies of maritime adventures. The master, under like emergencies, may borrow money at marine interest, and pledge the ship and freight to be earned on the voyage for repayment at the termination of the entire voyage, or an intermediate port of it, and may also draw bills of exchange, which the owner is bound to accept. Milward v. Hallett, 2 Caines, 77; The Tartar, 1 Hagg. Adm. 3; The Nelson, Id. 179; The Jane, 1 Dod. 466. This general doctrine is not in question in this issue, but the owner and claimant contended that there was no necessity justifying a bottomry loan; that the master had funds in hand from freights sufficient to meet the wants of the vessel, and accordingly the loans were not warranted by the maritime law; that the loan was made by the consignee of the ship, and that the master had no right to hypothecate the ship in his favor.

This objection lies substantially to both hypothecations. Upon this latter point there was for a time some uncertainty in the books, because it was considered as conducive to surreptitious and covinous practices between the master and consignee in remote ports. 3 Johns. 352; The Aurora [supra]. No case of authority has, however, repudiated such bonds, and the decisions acquiesce in them, if not positively sanction them. The Tartar, 1 Hagg. Adm. 1; The Zodiac, Id. 320. Lord Stowell, in repeated instances, developes the policy and ethics of bottomry transactions. He says, the loans are to be taken when the owner was known to have no credit, nor resources for obtaining necessary supplies. It is that state of unprovided necessity that alone supports these bonds. The absence of that necessity is their undoing. If the master takes up money from a person who knows that he has a general credit in the place, or at least an empowered consignee or agent there willing to supply his wants, the giving a bottomry bond is a void transaction, not affecting the property of the owner, and only fixing loss and shame on the fraudulent lender. But where honorably transacted, under an honest ignorance of this fact, an ignorance that could not be removed by any reasonable inquiry, it is the disposition of this court to uphold such bonds, as necessary for the support of commerce in its extremities of distress, and, as such, recognised in the maritime codes of all commercial ages and nations. The Nelson, 1 Hagg. Adm. 179; 3 Hagg. Adm. 74, 103. The objection that the bottomry holders are consignees of the ship, is obviated by the proof that they were not so by the appointment of the owner. They did not know each other; had no commercial relations; and, also, that the owner had no funds in their hands. The necessity of the loan is proved by the master. He says, the ship had been greatly injured by rubbing upon the rocks in the river Orinoco, and that upon a survey, the surveyors required that she should be overhauled and repaired; that he was absolutely in want of money for supplies, and that he could not leave St. Thomas unless he could have the money; that he applied to various persons without success, and he could not get the money unless he could secure the loan by bottomry. He knew of no other resource; he had none himself, and without this advance he would be unable to prosecute his adventure.

The further objection is taken, that the moneys loaned were lent upon the personal credit of the master. That would make no difference, provided the advance was made on an engagement for a bottomry security; and it is clear, from the proofs and the circumstances of the case, that the understanding of the parties was, when the advances

began, that they were to be secured by a bottomry of the ship. La Ysabel, 1 Dod. 273; The Virgin v. Vyfhius, 8 Pet. [33 U. S.] 538. This is usually so, for it is difficult to ascertain the precise amount requisite until the repairs are made and the supplies obtained. Lord Stowell remarked, upon a similar objection, that it was the understanding of the parties at the time, that the money should be secured by means of bottomry; and that it was of no consequence whether the money was advanced at once, and the bond immediately entered into, or whether the master received it from time to time, in different sums, and gave a bond for the whole amount. 1 Dod. 273; Hurry v. Hurry [Case No. 6,922]; The Aurora [supra]. It is further objected, that the master disregarded the instructions of the owner as to the voyage, and that the lender, upon due inquiry, might have learned this fact, and his negligence in this regard should avoid his bottomry security. No fraud is any where charged in the pleadings, no connivance or unfair dealing is set up, nor is it asserted that the lender was aware of any instructions received by the master, from the owner, which had been disregarded. If the master had deviated from instructions, and there was no connivance on the part of the elder lender, he will not be affected by the fact, without clear evidence of notice to him before his security was taken. The proof shows no want of good faith on the part of the master. By his correspondence he kept the owner fully informed of his situation, and solicited directions. When he arrived at Bordeaux, no instructions were given, other than to exercise the broadest discretion. The lenders, also, are to be presumed to have acted in good faith. The necessities of the vessel, her want of repairs and supplies, that the master had no means of his own, and had in vain resorted to others for raising money on bottomry, were facts of notoriety. If, in addition to such circumstances, the lender is required to give positive proof that the necessity of the master was absolute and remediless but by a bottomry loan, the doctrine would be disastrous to commerce, by destroying confidence in such securities, or rendering it impracticable to negotiate them. It is well established by the evidence that one if not both the bonds were taken for a larger amount than was required at the time for repairs and supplies to the vessel. There is included in one the wages of the master and expenses of board here and at St. Thomas, and in the other, advances to meet liabilities or necessities it was anticipated the vessel might be under after leaving Bordeaux, and in her after employment.

These are not particulars for which the vessel can be subjected by the master to a bottomry charge, but such irregularity in the bond does not destroy its obligation.

These items of excess may be expunged. A bottomry bond may be good in part and bad in part, and it will be upheld by courts of admiralty as a lien to the extent to which it is valid. Courts of admiralty are not, in this respect, bound to the strict rules of the common law, but decide upon the broadest principles of equity. The Augusta, 1 Dod. 283: The Tartar, 1 Hagg. Adm. 1: The Virgin v. Vyfhius [supra]. The reference to be made in the cause will provide for a specification of the particulars composing each bond, and when and for what causes the money was obtained.

Upon full consideration of the merits of the case, I am of opinion that both hypothecations are valid in law, and that the respective libellants are entitled to have their remedies enforced against the fund in court. That fund is brought into court upon a demand for seamen's wages earned on this voyage. Those wages are to be first satisfied out of the fund. 1 Dod. 40; 2 Dod. 13; 3 Hagg. Adm. 407; [Blaine v. The Charles Carter] 4 Cranch [8 U. S.] 328; The Mary [Case No. 9,187]. Both hypothecations being deemed by the court substantially valid; and no sufficient cause in the opinion of the court being shown for giving, between the two, priority of satisfaction to Bujac's or the elder bond, the ordinary privilege in bottomry cases (Abb. Shipp., Ed. 1829, 128; The Sydney Cove, 2 Dod. 1) must prevail here, and the bond to Furniss & Co. will be entitled to be first paid out of the proceeds. But both decrees in these causes are entitled to priority of payment over the mortgage lien of the claimant. 3 Kent, Comm. 358; 2 Hagg. Adm. 294. The clerk, on the reference, will ascertain and report to the court the particulars composing each bond, and the time and occasion upon which the advances were made by the obligees, to enable the court to reform, if necessary, the amount legally secured by the bottomry hypothecation.

It is therefore adjudged, that the libellants respectively recover the amount of their said bottomry bonds, with the marine interest reserved thereon, and six per cent. on the sum of such principal and marine interest, computed from the time of the falling due of the respective bonds to the day of this decree, together with their costs to be taxed; and that the decree in favor of Furniss & Co. on the junior bottomry be first satisfied out of the proceeds of said vessel, her tackle, &c., in court, subject to such deductions and reform of the amount as may be thus ordered by the court, on the coming in of the clerk's report in the premises, and it is referred to the clerk to ascertain and report the amount payable to the libellants, upon the said bonds respectively, conformably to the principles of this decree.